IN THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| TRANSPECOS FOODS, L.P. | § | Case No. |
| | § | Chapter 11 |
| Debtor. | § | |

## AFFIDAVIT IN SUPPORT OF FIRST DAY MOTIONS

Gary Candy, being duly sworn, deposes and states:

I am the Manager of TPF GP, LLC, the general partner of the Debtor, TransPecos Foods, L.P. a debtor and debtor in possession in the proceedings. I am generally familiar with the day-to-day operations, business and financial affairs and books and records of Debtor.

1.  On June 9, 2011 (the "Petition Date"), Debtor and debtor in possession (the "Debtor") filed a petition for relief under chapter 11 of title 11 of the United States Bankruptcy Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Western District of Texas, El Paso Division.

2.  To enable the Debtor to minimize the adverse effects of the commencement of the chapter 11 case on its business, the Debtor has requested various types of relief in a number of applications and motions (collectively the "First-Day Motions"). The First-Day Motions seek relief intended to, among other things, maintain customer loyalty, engender vendor and supplier confidence and bolster employees' morale. Each First-Day Motion is crucial to the Debtor's reorganization efforts.

3.  I submit this Affidavit in support of the First-Day Motions. Any capitalized term not expressly defined herein shall have the meaning ascribed to that term in the relevant First-Day Motion. All facts set forth in this Affidavit are based on my personal knowledge, upon information supplied to me by others employed by the Debtor, upon my review of relevant documents, or upon my opinion based upon my experience and knowledge of the Debtor's operations, financial conditions and its present liquidity crisis. If I were called upon to testify, I could and would testify competently to the facts set forth herein. I am duly authorized to submit this Affidavit.

### A. Operations

1. Debtor is a significant multi-tier distributor of consumable package goods in the United States. Debtors' distribution business involves purchasing, receiving, warehousing, marketing, selecting, loading, delivering and distributing a wide variety of consumable items including vegetables, dairy products and packaged goods.

2. The Debtor is located in the small West Texas town of Pecos, where the world processing facility is located. The plant covers 140,000 square feet and includes high-capacity frying equipment, batter and bread applicators, spiral freezers and other highly specialized equipment.

3. These products are purchased from a diverse range of vendors and agricultural growers. These items are converted into Texas stuffed Jalapenos, corn/apple/broccoli nuggets and at least 4-6 types of onion ring products and crispy vegetables. More information is available on the website at www.transpecosfoods.com.

### B. Existing Debt Facilities

4. The Debtor, historically has generated some of the cash necessary to finance operations by incurring certain debt obligations, primarily through bank loans. Accordingly, the Debtor is party to numerous pre-petition financing arrangements including: secured bank debt arising under a credit facility; and obligations arising under a series of unsecured trade debt obligations. Each of the foregoing types of indebtedness are described more fully below.

### I. Credit Facility

5. Commencing in March, 2008, the Debtor borrowed funds on multiple occasions from City Bank of Pecos located in Lubbock, Texas. The outstanding balances on the four (4) indebtednesses to City Bank of Pecos are $2,968,131.04, $634,000.00, $1,149,860.85 and $1,023,685.47, respectively. The aggregate sum is $5,775,677.20. This indebtedness is secured by a blanket lien on all real and personal assets of the Debtor.

6. On August 10, 2008, the Debtor borrowed funds from 4B Pecos Economic Development Foundation. The outstanding balance is $462,000.00 and is secured by liens on certain specified pieces of equipment.

7. TMF Sub CDE 1, LLC of Dallas, Texas loaned the Debtor approximately $12,500,000.00 on March 29, 2010. The borrowing took the form of three (3) promissory notes secured by a blanket lien on all assets except real estate (land and buildings). The outstanding balances on the three (3)

promissory notes are $9,498,180.00, $2,996,820.00 and $300,000.00. Thus, the complete indebtedness is $12,795,000.00 on the Petition Date.

8. On February 8, 2011, the Debtor borrowed approximately $9,000,000.000 from RDP Loan NMTC #2 located in Mason City, Iowa. The current balance on that note is $8,561,739.00. The loan was secured by a blanket lien on all assets excluding real estate (land and building). Simultaneously, the Debtor borrowed approximately $2,500,000.00 from RDP Loan NMTC #2, secured by the same collateral. The balance on this note is $2,268,266.00.

**II. Trade Debt**

9. By the nature of its business, the existence of trade debt is a necessity for the Debtor (the "Trade Debt"). Specifically, the vast majority of the Debtor's business stems from purchasing goods from third party suppliers and vendors.

10. In addition to its purchased products, the Trade Debt is further comprised of monies owed to transportation vendors (collectively, the "Shippers") to support its core business of distributing food from its Pecos, Texas processing plant.

11. In addition to the Merchandise Suppliers and the Shippers, the Debtor relies on other vendors to support their core business functions. The Debtor estimates that, as of the Petition Date, its Trade Debt is approximately $2,152,277.

**C. Events Leading to Chapter 11**

12. Both the food distribution and retail food industries are highly competitive. Generally, the consumable goods industry is marked by bulk sales with low profit margins. Consequently, even the slightest price changes have significant economic implications. Given the recent instability of the national economy, the Debtor's business have suffered greatly.

13. TransPecos Foods, LP was started in 2002 when it purchased a building and equipment from McCain Foods, USA to produce the highest quality frozen appetizers. The manufacturing facilities are located in the small West Texas town of Pecos. The manufacturing facility is 140,000 square feet. The plant includes high-capacity frying equipment, batter and breading applicators, spiral freezers, and a host of specialized equipment that makes our facility one of the industry's finest.

14. TransPecos Foods services the Foodservice Market, Retail Market, National Accounts, and does Institutional Contract Manufacturing. TransPecos Foods offers it's end users the opportunity to enjoy the highest quality onion rings, vegetables, peppers, and cheese appetizers available

## FACTS IN SUPPORT OF FIRST DAY MOTIONS AND APPLICATIONS

On June 8, 2011 the Debtor filed a number of First Day Motions pertaining to their operational and restructuring activities. I have reviewed each of the First Day Motions (including the exhibits thereto) and I believe that the relief sought in each: (1) is necessary to enable the Debtor to operate in chapter 11 with a minimum of disruption or loss of sales; and (2) constitutes a critical element in achieving the Debtor's successful reorganization. The First Day Motions consist of the pleadings described below.

### A. Motion for Order Under 11 U.S.C. §§ 105, 363, 1107 and 1108 Authorizing (I) Maintenance of Existing Bank Accounts, and (II) Continued Use of Existing Cash Management System

15. The Debtor seeks to minimize unnecessary costs and the disruption of its business by continuing to utilize its existing cash management systems for operations conducted post-petition.

16. The Debtor processes invoices in an aggregate dollar amount of approximately $250,000.00 per week on account of its operations. The Debtor also processes payroll and health benefits obligations for the company.

17. The Debtor hereby seeks authority to continue utilizing the current centralized cash management system and to pay certain debts and obligations as authorized by this Court. Given the need to preserve and enhance its going concern value, a successful reorganization of the Debtor's business simply cannot be accomplished if there is substantial disruption in the Debtor's cash management procedures. It is essential, therefore, that the Debtor be permitted to continue to consolidate the management of cash and transfer money as needed and in the amounts necessary to continue the operation of their businesses.

18. If the Debtor is not permitted to continue to utilize its consolidated cash management system in its current form (modified to the extent necessary by the debtor-in-possession financing arrangements), its operations would be severely, and perhaps, irreparably impaired.

### B. Motion For Authority To Pay Pre-petition Claims Arising Under The Perishable Agricultural Commodities Act

19. By this Motion, the Debtor seeks entry of an order granting the Suppliers (as defined below) administrative expense priority status under section 503(b) of the Bankruptcy Code for undisputed obligations arising from the Outstanding Orders (as defined below) for goods that are delivered to and accepted by the Debtor subsequent to the Commencement Date and, out of an abundance of caution, authorizing the Debtor to satisfy all pre-petition and post-petition undisputed obligations to the Suppliers in the ordinary course of business under section 363(c) of the Bankruptcy Code.

20. In the ordinary course of the Debtor's business, numerous vendors and suppliers provide the Debtor with goods, various products, packaging materials and vegetables, essential to the operation of its business. As of the Commencement Date, the Debtor had several pre-petition purchase orders outstanding (the "Outstanding Orders") with vendors and suppliers (the "Suppliers") necessary to the operation of its business. The vegetable suppliers are protected by another federal law, the Perishable Agricultural Commodities Act ("PACA"). PACA suppliers have a trust imposed on the Debtor's entire inventory and proceeds which is superior to all other claimants. Under the APA and the Cash Collateral Orders, the Debtor is required to pay the PACA suppliers at closing.

21. The relief requested herein will ensure a continuous supply of goods. This is indispensable to the Debtor's continuing operations and integral to a successful reorganization. The attendant disruption to the continuous and timely flow of goods used in the Debtor's business could result in insufficient supplies and materials to adequately conduct its operations and inability to close the Asset Purchase Agreement, which would be highly detrimental at this critical juncture in the Debtor's efforts to achieve a successful reorganization.

### C. Motion of Debtors for an Order (A) Prohibiting Utility Companies From Altering, Refusing, or Discontinuing Services, (B) Deeming Utilities Adequately Assured of Payment For Post Petition Services and (C) Establishing Procedures for Determining Requests for Additional Assurances Pursuant to Sections 105 and 366 of the Bankruptcy Code

22. Uninterrupted utility services are essential to the Debtor's operations. The Debtor presently relies on these utility services to maintain operations at Pecos, Texas location. The Debtor cannot maintain its facilities and related operations if utility services are disrupted. Nor is it realistic to expect the Debtors to be able to work out individual adequate assurance arrangements with the different

Utility Companies serving that location. If the Utility Companies are permitted to terminate utility services after the 20-day standstill period provided by section 366 of the Bankruptcy Code, the Debtor's business will be irreparably harmed and its efforts to reorganize imperiled.

23. Under the Supply Contract that is part of the Asset Purchase Agreement ("APA"), the Debtor is required to operate the Pecos, Texas facility for Monogram ("Purchaser") for two (2) to four (4) months following the Petition Date and closing of the APA.

24. In the past, the Debtor has enjoyed healthy relationships with its Utility Companies paying for utility services in accordance with the parties' custom and practice. To the best of my knowledge, as of the Petition Date, there are no defaults with respect to any utility bills. In addition, there are no arrearages of any significance, other than amounts not yet due or invoiced or amounts that have not yet been paid on invoices received immediately prior to the Petition Date. The Debtor has sufficient cash reserves and access to cash collateral to pay promptly all of their respective obligations for utility services on an ongoing basis and in the ordinary course of their business.

**D. Motion of Debtors for an Order Pursuant to Sections 105 and 363(B) of the Bankruptcy Code (I) Authorizing the Payment of Employee Obligations and (II) Authorizing Financial Institutions to Honor and Process Checks and Transfers Related to Such Obligations**

25. By this Motion, the Debtor seeks entry of an order (i) authorizing but not requiring payment of employee obligations and (ii) authorizing financial institutions to honor and process checks and transfers related to such obligations,

26. Contemporaneously herewith, the Debtor filed a motion seeking authority to continue its cash management system, which includes allowing the Debtor to continue to use its pre-petition bank accounts and authorizes the Debtor's banks to honor the Debtor's pre-petition payment demands.

27. The Debtor currently employs approximately 100 full and part-time personnel including management, officers, salaried and hourly employees (the "Debtors' Employees").

28. The Debtor's payroll is approximately $220,000.00 on a monthly basis. The Debtor administers its own payroll and makes its payroll disbursements through its own set of bank accounts (the "Debtor Payroll Obligations").

29. The Debtor terminated its employees on May 31, 2011 and provided WARN Act notices to the employees. The Debtor desires to pay the employees the required final payroll from the sales proceeds on June 7, 2011 and the $87,788.18 due to employees for the pre-petition wages.

30. The majority of the Debtor's Employees with the Allocated Obligations are key personnel who are essential to the continued functioning of the Debtor. I believe that any failure by the Debtor to reimburse this personnel may destabilize these employment relationships, which would in turn have a negative impact on the Debtor's ability to comply with its obligation under the Supply Contract going forward. Given the amount at issue, and the critical importance of retaining the Debtor's Employees, I submit that cause exists to authorize the Debtor to pay the Allocated Obligations.

31. With respect to the Employee Payroll Obligations and Allocated Obligations (collectively the "Employee Obligations") for which checks have been issued but have not been cleared as of the Petition Date, the Debtor requests that, to the extent practicable, the Debtor's banks be authorized to honor such checks or fund transfers regardless of whether they were issued pre-petition or post-petition.

In addition, the Debtor seeks authority, in its discretion and in the exercise of its business judgment, to issue new post-petition checks or fund transfer requests on account of the Employee Obligations to replace any pre-petition checks or fund transfer requests that may have been dishonored or denied.

32. While the Debtor's banks are generally prohibited from honoring pre-petition checks and fund transfer requests, it is practicable to direct the Debtor's banks to honor checks drawn on or requests for transfer of funds in the ordinary course for the purposes of clearing the Employee Obligations.

### E. Motion for Administrative Order Under 11 U.S.C. §§ 105(A) and 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals and Committee Members

33. The Motion establishes procedures for the reimbursement of Court-approved professionals. I believe that the relief requested in the Motion will streamline the professional compensation process and enable the Court and all other parties to more effectively monitor the professional fees incurred in this chapter 11 case.

### F. Emergency Motion for (A) Interim and Final Order Authorizing Use of Cash Collateral and Granting Adequate Protection Nunc Pro Tunc to the Petition Date, and (B) Approving Post-Petition Financing and Related Relief

34. Debtor does not have sufficient available sources of post-petition financing. The ability of the Debtor to maintain business relationships with its vendors and suppliers, to purchase new inventory and otherwise to finance its operations is essential to the Debtor's continued viability. As discussed above, all of the Debtor's Pre-Petition Collateral is encumbered pursuant to the Pre-Petition Credit Agreement.

35. The Debtor has an urgent and immediate need for cash to continue to operate its business and to seek relief of this Court through the procurement of debtor-in-possession financing sufficient to meet the Debtor's operating expenses, and to pay critical vendors, professional fees and expenses, and other expenditures. Without immediate (and ongoing) access to the cash in the Debtor's operating accounts and the cash to be collected after the Petition Date, the Debtor cannot pay current and ongoing operating expenses, including, without limitation, post-petition wages and salaries and necessary vendor products and services. Consequently, the Debtor will suffer irreparable harm, thereby jeopardizing any prospects for success in these cases.

36. The Debtor considered new financing to replace or supplement the financing provided by the Pre-Petition Lender. Prior to the Petition Date, the Debtor considered other lenders but was not able to secure post-petition financing on as competitive a basis as provided by the Lender within the short time frame and on terms required by the Debtor. Accordingly, the Debtor believes that the financing arrangement proposed by the Lender represent the best available to it at this time.

FURTHER AFFIANT SAYETH NAUGHT

_____
Gary Candy, Manager
TPF GP, LLC, General Partner
TransPecos Foods, LP

SWORN TO AND SUBSCRIBED before me on this the 9th day of June, 2011

_____
Notary Public in and for the
State of Texas
My Commission Expires:

JANET J. SINCLAIR
NOTARY PUBLIC
In and for the State of Texas
My commission expires
February 12, 2014

## CERTIFICATE OF SERVICE

I certify that on this ⁹ᵗʰ day of June, 2011, a true and correct copy of the foregoing was served upon the following parties listed on the Court's ECF Noticing System via electronic means, and by regular, first class mail. I further certify that on this 9th day of June, 2011, a true and correct copy of the foregoing was served, regular, first class mail upon the following parties:

U.S. Trustee's Office
615 E. Houston, Suite 533
P.O. Box 1539
San Antonio, TX 78295-1539

Gary Candy
TPF GP, LLC
2 Spence Road
Boerne, TX 78006

Bruce E. Toppin, III
Kennedy, Toppin & Sutherland, LLP
112 East Pecan Street, Suite 800
San Antonio, Texas 78205

Michael Hicks
Mullin, Hoard & Brown, LLP
1500 Broadway, Suite 700
Lubbock, TX 79401

E. Frank Childress
Robert Del Priore
Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
165 Madison Ave., Suite 200
Memphis, TN 38103


and to all of the parties listed on the attached List of Creditors Holding 20 Largest Claims pursuant to L.R. 9013(c)(1)(B)

_____
WILEY F. JAMES, III

Barker Produce
P.O. Box 611
Mesilla Park, NM 88047

Newlyweds Foods, Inc.
Lock Box 6327
Chicago, IL 60680

Topco
P.O. Box 96002
Cincinnati, OH 60693

National Onion, Inc.
P.O. Box 7206
Las Cruces, NM 88006

TransPecos Banks
P.O. Box 2037
Pecos, TX 79772

Agropur, Inc.
Bin No. 259
Milwaukee, WI 53288

Daymon Worldwide Design
P.O. Box 3801
Carol Stream, IL 60132

Stadium Funding, LLC
112 E. Pecan St.
San Antonio, TX 78205

StarTex Power
P.O. Box 4802
Houston, TX 77210

DCS Sanitation Management
P.O. Box 630448
Cincinnati, OH 45263

DanHil Containers, LLC
P.O. Box 61147
San Angelo, TX 76906

ADM Oil
P.O. Box 66838
St. Louis, MO 63166

Bybee Foods, LLC
P.O. Box 2508
Pasco, WA 99302

Leprino Foods
1830 West 38th Ave.
Denver, CO 80211

Preferred Freezer Svcs. - Atlanta
518 Forest Pkwy.
College Park, GA 30349

Hilbig Services, Inc.
P.O. Box 460
Schertz, TX 78145

Kennedy & Baris
112 E. Pecan, #800
San Antonio, TX 78205

Rite Stuff Foods, Inc.
P.O. Box 447
Jerome, ID 83338

Motion Industries, Inc.
P.O. Box 849737
Dallas, TX 75284

Jewel Apple
P.O. Box 27
Yakima, WA 98907