IN THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| TRANSPECOS FOODS, L.P. | § | Case No. |
| | § | Chapter 11 |
| Debtor. | § | |

## DEBTOR'S NOTICE OF FILING PROPOSED ORDER

TO THE HONORABLE H. CHRISTOPHER MOTT, UNITED STATES BANKRUPTCY JUDGE:

COMES NOW TRANSPECOS FOODS, L.P., Debtor herein, and submits the attached PROPOSED ORDER (I) authorizing the Debtor to obtain post-petition financing and granting security interests as provided herein on a secured and super-priority basis, (II) authorizing the Debtor's use of cash collateral as that term is defined in section 363 of the Bankruptcy Code (the "Cash Collateral"), (III) providing adequate protection under sections 361 and 363 of the Bankruptcy Code, and (IV) approving the form of notice of and scheduling of a final hearing pursuant to Bankruptcy Rule 4001[Docket No. 9].

Respectfully submitted,

**JAMES & HAUGLAND, P.C.**
P.O. Box 1770
El Paso, Texas 79949-1770
Telephone: 915-532-3911
Facsimile: 915-541-6440

By: _____
WILLIAM JAMES, III
State Bar No. 10554300
Proposed Attorney for TransPecos Foods, L.P.

# CERTIFICATE OF SERVICE

I certify that on this 16th day of June, 2011, a true and correct copy of the foregoing was served upon the following parties listed on the Court's ECF Noticing System via electronic means, and by regular, first class mail. I further certify that on this 16th day of June, 2011, a true and correct copy of the foregoing was served, regular, first class mail upon the following parties:

U.S. Trustee's Office
615 E. Houston, Suite 533
P.O. Box 1539
San Antonio, TX 78295-1539

Gary Candy
*TPF GP, LLC*
2 Spence Road
Boerne, TX 78006

Bruce E. Toppin, III
*Kennedy, Toppin & Sutherland, LLP*
112 East Pecan Street, Suite 800
San Antonio, Texas 78205

David R. Langston
*Mullin, Hoard & Brown, LLP*
1500 Broadway, Suite 700
Lubbock, TX 79401

E. Frank Childress
Robert Del Priore
*Baker, Donelson, Bearman, Caldwell & Berkowitz, PC*
165 Madison Ave., Suite 200
Memphis, TN 38103

David G. Aelvoet
*Linebarger Goggan Blair & Sampson, LLP*
711 NAVARRO, SUITE 300
SAN ANTONIO, TX 78205

and to all of the parties listed on the attached List of Creditors Holding 20 Largest Claims pursuant to L.R. 9013(c)(1)(B).

_____
WILEY E. JAMES, III

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| In Re: | § § | |
| TRANSPECOS FOODS, L.P. | § § § § § | Case No. 11-31124<br>Chapter 11 |
| Debtor. | | |

## AGREED ORDER GRANTING
## DEBTOR'S INTERIM AUTHORITY
## TO USE CASH COLLATERAL AND PROVIDING
## ADEQUATE PROTECTION TO SECURED CREDITORS

On June 14, 2011, the Court held a hearing on the Debtor's Emergency Motion for Interim and Final Orders (I) Authorizing Secured Post-Petition Financing, (II) Granting Security Interests and According Super-Priority Administrative Claim Status, (III) Authorizing Use of Cash Collateral, and (IV) Scheduling Final Hearing (Docket No. __) (the "Motion"). Trans Pecos Foods, L.P., (the "Debtor"), City Bank Texas, Lubbock, Texas ("City Bank"), the United States Trustee ("Trustee"), and the Reeves County and Pecos Barstow Toya ISD ("Taxing Authorities"), each appeared through their respective counsel, and announced that they had reached an agreement for the interim use of cash collateral, as expressed in this Order. The Court having considered the Motion and the terms of the proposed agreement between the parties finds, concludes, and ORDERS:

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. This matter concerns the administration of these bankruptcy estates including the use of cash collateral and, thus, is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (M).

2. On June 9, 2011 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

{6093\60\00342258.DOC / 1}Agreed Second Order Granting Debtors' Emergency Motion
for Authority To Use Cash Collateral and to Provide
Adequate Protection to Secured Creditors – Page 1 of 8


PROPOSED ORDER

3. On June 9, 2011, the Debtor filed the Debtor's Motion requesting that the Court, among other things, approve the interim use of cash collateral and set a hearing on the Debtor's continued use of cash collateral.

4. The Debtor owns and operates a food processing company located in the City of Pecos, Reeves County, Texas, and its principal assets consist of (a) land and building located near Interstate I-20 in Pecos, Texas, (b) inventory used in the food processing business consisting of both raw products such as onions and jalepeno peppers, and finished snack foods consisting of such products as frozen battered onion rings, cheese sticks, and jalepeno "poppers," (c) equipment used in the food processing business, (d) accounts receivable generated by the food processing business, and (e) contract rights on the purchase and delivery sides of the food processing business.

5. By virtue of the agreement of the parties, the Court is entering this Agreed Order Granting Debtors Interim Authority to Use Cash Collateral and Providing Adequate Protection to Secured Creditors ("Order") which shall allow the Debtors to use the cash collateral described herein in accordance with the budgets attached to this Order until June __, 2011, at which time the authority shall expire. The Court is scheduling a hearing for June __, 2011, at _____ .m. in the U.S. Bankruptcy Courtroom, _____, _____, Texas, to consider the Debtor's request for continued use of cash collateral.

6. The Debtors currently have in their possession the following cash collateral which is subject to liens and security interests asserted by City Bank, a tax lien in favor of the Taxing Authorities, and certain claims by creditors arising under the Perishable Agricultural Commodities Act ("PACA") (collectively referred to as "Secured Creditors"):

- $196,108.00    [consisting of in depository accounts of the Debtor located at TransPecos Bank, Pecos, Texas];
- $499,424.00    [consisting of accounts receivable due from

      customers of the Debtor; and

- $718,099.00  [consisting of Raw Materials Inventory ($155,724), Batters and Breading Inventory ($71,088), Packaging Inventory ($185,003) and $218,557 worth of finished product that is ready to be shipped to customers who have placed orders with Debtor].

The Debtor proposes to account for these proceeds by depositing the funds in the Debtor in Possession bank accounts at TransPecos Banks. The Debtor shall keep good accounting records for the receipt and disbursement of all funds so as to accurately trace the source and use of the funds from the various sources.

  7. The Debtor, City Bank, Trustee, and the Taxing Authorities have agreed and the Court hereby grants the Debtor's interim use of $170,000 worth of the cash collateral pledged or allegedly subject to a security interest in favor of City Bank, personal property tax liens in favor of the Taxing Authorities, and certain PACA claims asserted by providers of perishable food products, as limited by this Order until June __, 2011. The Debtor's cash uses authorized for the period shall conform to the budget that has been prepared by the Debtor, exchanged with counsel for the Secured Creditors and the representative of the U.S. Trustee's Office, and are appended to this Order as Exhibit "A." Such budget will be used for all purposes associated with this Order and the uses of the cash shown on such projections may exceed any line item in the cash flow projection by not more than ten percent (10%) and the total of cash collateral used during this interim period shall not exceed the total sum of $170,000 without the express written consent of the Secured Creditors. The Debtors' may request the consent of the Secured Creditors to exceed the amounts in the budgeted categories or to exceed the total amount of cash collateral authorized by this Order in order to cover extraordinary or unanticipated expenses by written request, and the Secured Creditors shall provide Debtor with a written response to such request within two business days of the receipt of such request from the Debtor. Requests for a variance

from the approval granted by this Order should be directed to counsel for the Secured Creditors, who shall attempt to respond promptly to a request.

8. The Debtors shall deposit all of the cash collateral in the Debtor's possession, custody or control and which the Debtor may receive in the future, in accounts in the name of the Debtor, which will be styled as "Debtor in Possession accounts" (the "Cash Collateral Accounts"). The Debtor shall pay out of the Cash Collateral Accounts only the expenses shown on the budget appended to this Order and only by checks written, or withdrawals taken the Cash Collateral Accounts. Debtors are prohibited from withdrawing funds from the Cash Collateral Accounts except to fund the approved expenses as provided for in the budget appended to this Order. The Debtor shall comply with all rules and regulations of the Office of the United States Trustee in connection with the accounts referenced above.

9. As adequate protection of the Secured Creditors' interest in the property, collateral, and cash collateral in accordance with 11 U.S.C. §§ 361 and 363(e) and applicable law, the Secured Creditors' are hereby granted continuing replacement like kind liens and security interests, if any, in all of the property of the estate of the kind presently securing the indebtedness owing to the Secured Creditors in accordance with 11 U.S.C. § 361(2) in the same priority and in the same nature, extent and validity as such liens existed pre-petition. To the extent a lien is created in accounts receivable and assets received, accruing or becoming the Debtor's property on a post-petition basis, such lien shall extend only to protect the Secured Creditors for the amounts of cash collateral used on a post-petition basis. This Order shall be sufficient and conclusive evidence of the priority, attachment, and validity of all of the replacement liens and security interests of the Secured Creditors granted herein, and the liens granted, created and/or ratified herein shall, by virtue of the filing of a certified copy of this Order in any filing or recording office in any county or state, constitute valid liens without the

necessity of creating, filing, recording, or serving any financing statements or other documents that might otherwise be required under federal or state law in any jurisdiction or the taking of any other action to validate the adequate protection replacement liens granted herein to the Secured Creditors in this Order and, in such event, the subject filing or recording officer is authorized to file or record a certified copy of this Order.

10. The granting of the continuing replacement liens in all property of the estate of the kind presently securing the indebtedness owing to the Secured Creditors and the continuing replacement liens in all property of the estates of the kind presently securing the indebtedness owing to that Secured Creditors under this Order shall have no effect on any challenge or objection to the priority, nature, extent, validity, and/or enforceability as to any of the underlying pre-petition liens held by the Secured Creditors which may be raised under applicable state or federal law.

11. The Debtors shall provide a weekly accounting to the Secured Creditors' on their use of the cash collateral, which shall include a summary of all of the Debtor's receipts and disbursements of cash, a report on the status of outstanding accounts receivable and payable, and a report on the inventory on-hand at the food processing facilities. In order to facilitate such weekly reporting, the Debtor, and the Secured Creditors shall agree on a mutually agreeable weekly operating report form for the Debtors to use for the weekly reporting of receipts and disbursements and business operations. These weekly reports shall be provided to counsel for the Secured Creditors by noon of each Friday after the entry of this Order until three (3) business days prior to the hearing set by this Order to consider Debtors' request for continued use of cash collateral. The Debtors' shall provide a summary of operations and use of cash collateral during the period of their interim use of cash collateral three (3) days prior to such hearing. Copies of all reports on operations and interim use of cash collateral shall be similarly provided to the Office

of the United States Trustee contemporaneously with Debtors providing such reports to the Secured Creditors.

12. By agreeing to the terms of this Order, the Secured Creditors, respectively, waive no rights to file or prosecute a motion to lift stay or for other relief, or to assert that they are not adequately protected, and expressly reserve all such rights. Upon reasonable notice given by the Secured Creditors listed herein to the Debtor and the Debtor's counsel, the Debtor shall permit representatives, agents, and/or employees of the Secured Creditors listed herein to have reasonable access to Debtor's business premises and the Debtor's assets for review, appraisal, and inspection of the collateral of the Secured Creditors listed herein, and the Debtor shall cooperate with respect to such reviews, appraisals and inspections.

13. Use of Cash Collateral in the operation of the Debtors' business since the Petition Date and during this bankruptcy proceeding is hereby authorized by virtue of the limited consent by the Secured Creditors herein, pursuant to the applicable provisions of 11 U.S.C. § 363(c) and Bankruptcy Rule 4001(b)(2).

14. If the Debtor defaults, either by exceeding the authorized use of cash collateral as set forth herein or by failing to comply with other provisions of this Order, then such conduct shall be considered a material breach of the Order and shall impact the Debtor's ability to get the Court's authorization for the continued use of cash collateral following the expiration of this interim period.

15. The Court finds that notice provided to interested parties and the opportunity for objection to this Order and a hearing thereon is appropriate under the circumstances.

16. Any consent to the use of Cash Collateral by the Secured Creditors shall not be construed as consent to an extension of exclusivity, pursuant to 11 U.S.C. § 1121, nor a waiver of any right, including without limitation the right to seek relief from the automatic stay or seek

the appointment of a trustee in the pending bankruptcy case of the Debtor. This Order shall not be construed as consent by the Debtor to any acceleration of time related to any request for relief from the automatic stay by any Secured Creditor. Likewise, this Order is without prejudice to the Debtor seeking other and further use of cash collateral.

17. The findings of fact and conclusions of law of this Court pursuant to this Order shall be deemed effective upon the entry of this Order. To the extent that such findings may constitute conclusions, and vice versa, they hereby are deemed as such. Such findings are solely for the purpose of this Order.

18. Except as ordered hereby, nothing contained herein shall waive or modify any rights and remedies which the Secured Creditors herein or the Debtor may have at law, in equity, or otherwise, including but not limited to the right to seek a modification of this Order.

19. Upon appropriate order of this Court, the Debtor may use cash collateral to pay pre-petition obligations of the Debtor in the form of outstanding freight or warehouse charges associated with the storage or movement of finished food products owned by the Debtor and which are contemplated to be sold or delivered to customers pursuant to the terms of this Order. The use of cash collateral for these purposes shall not exceed $79,000 reflected as freight charges on the budget attached hereto.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that a final hearing on the use of cash collateral shall be held before the Honorable H. Christopher Mott, U.S. Bankruptcy Judge, United States Bankruptcy Court, _____, _____, Texas, on the \_\_th day of June, 2011, beginning at _____.m., or as soon thereafter as it may be heard.

###

AGREED:

/s/ David R. Langston
David R. Langston; SBN 11923800
Darrell J. Guthrie, SBN: 24007289
MULLIN HOARD & BROWN, L.L.P.
P.O. Box 2585
Lubbock, Texas 79408-2585
Telephone: (806) 765-7491
Facsimile: (806) 765-0553
***Attorneys for City Bank Texas, Lubbock, Texas***


/s/ Wiley F. James
Wiley F. James, III, SBN: 10554300
James & Haugland, P.C.
P.O. Box 1770
El Paso, Texas 79949-1770
Telephone: (915) 532-3911
Facsimile: (915) 541-6440
***Attorneys for the Debtor***


/s/ David Aelvoet
David Aelvoet, SBN: 00786959
LINEBARGER GOGGAN
BLAIR & SAMPSON, LLP
711 Navarro, Suite 300
San Antonio, TX 78205
(210) 225-4422 - Telephone
(210) 226-4308 - Fax
***Attorney for Taxing Authorities***

/s/ Kevin M. Epstein
Kevin M. Epstein, SBN: 10554300
615 E. Houston Street, Suite 533
San Antonio, Texas 78205
Telephone: 210-472-4640
Facsimile: 210-472-4679
***Attorney for Office of the United States Trustee***

**Trans Pecos Foods, LLP**
**13 Week Cash Flow Forecast**
*($ in 000s)*

| | | MAY | | | | | JUNE | | | | JULY | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Week # | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| Week Ending Sun, | Forecast 5/1 | Forecast 5/8 | Forecast 5/15 | Forecast 5/22 | Forecast 5/29 | Forecast 6/5 | Forecast 6/12 | Forecast 6/19 | Forecast 6/26 | Forecast 7/3 | Forecast 7/10 | Forecast 7/17 | Forecast 7/24 | Forecast 7/31 |
| **REVENUE** | | | | | | | | | | | | | | |
| Gross Revenue | $0 | $0 | $0 | $0 | $0 | $0 | $125 | $75 | $0 | $0 | $0 | $0 | $0 | $0 |
| (-) Allowance / Discounts | 0 | 0 | 0 | 0 | 0 | 0 | (6) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Net Revenue | 0 | 0 | 0 | 0 | 0 | 0 | 119 | 75 | 0 | 0 | 0 | 0 | 0 | 0 |
| **CASH FLOW** | | | | | | | | | | | | | | |
| Receipts | | | | | | | | | | | | | | |
| A/R Collections | $0 | $0 | $0 | $0 | $0 | $0 | $72 | $70 | $0 | $0 | $0 | $0 | $0 | $0 |
| Other Revenue - Asset Purchase | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Receipts | 0 | 0 | 0 | 0 | 0 | 0 | 72 | 70 | 0 | 0 | 0 | 0 | 0 | 0 |
| Operating Disbursements | | | | | | | | | | | | | | |
| Raw Materials | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Payroll | 0 | 0 | 0 | 0 | 0 | 0 | 0 | (42) | 0 | 0 | 0 | 0 | 0 | 0 |
| Utilities | 0 | 0 | 0 | 0 | 0 | 0 | 0 | (2) | 0 | 0 | 0 | 0 | 0 | 0 |
| Freight | 0 | 0 | 0 | 0 | 0 | 0 | (49) | (30) | 0 | 0 | 0 | 0 | 0 | 0 |
| Repairs and Maintenance | 0 | 0 | 0 | 0 | 0 | 0 | (2) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Professional Services | 0 | 0 | 0 | 0 | 0 | 0 | (4) | (14) | 0 | 0 | 0 | 0 | 0 | 0 |
| Equipment and Supplies | 0 | 0 | 0 | 0 | 0 | 0 | (1) | (1) | 0 | 0 | 0 | 0 | 0 | 0 |
| Brokers Commissions | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Property Taxes | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Insurance | 0 | 0 | 0 | 0 | 0 | 0 | 0 | (13) | 0 | 0 | 0 | 0 | 0 | 0 |
| Sanitation | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| T&E / Employee Expenses | 0 | 0 | 0 | 0 | 0 | 0 | (1) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Other | 0 | 0 | 0 | 0 | 0 | 0 | (13) | (16) | 0 | 0 | 0 | 0 | 0 | 0 |
| Operating Disbursements | 0 | 0 | 0 | 0 | 0 | 0 | (70) | (118) | 0 | 0 | 0 | 0 | 0 | 0 |
| *Operating Cash Flow* | *0* | *0* | *0* | *0* | *0* | *0* | *2* | *(48)* | *0* | *0* | *0* | *0* | *0* | *0* |
| *Cumulative Operating Cash Flow* | *(477)* | *(477)* | *(477)* | *(477)* | *(477)* | *(477)* | *(475)* | *(524)* | *(524)* | *(524)* | *(524)* | *(524)* | *(524)* | *(524)* |
| Non-Operating Disbursements | | | | | | | | | | | | | | |
| Citibank Notes Payable (P&I) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| NMTC Funding Interest Expense | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Other Debt P&I | 0 | 0 | 0 | 0 | 0 | 0 | (4) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Capital Expenditures | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Payments on Beginning A/P (see line 3) | 0 | 0 | 0 | 0 | 0 | 0 | (4) | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Non-Operating Disbursements | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Total Disbursements | 0 | 0 | 0 | 0 | 0 | 0 | (74) | (118) | 0 | 0 | 0 | 0 | 0 | 0 |
| Net Cash Flow | 0 | 0 | 0 | 0 | 0 | 0 | (2) | (48) | 0 | 0 | 0 | 0 | 0 | 0 |
| *Cumulative Net Cash Flow* | *(849)* | *(849)* | *(849)* | *(849)* | *(849)* | *(849)* | *(851)* | *(900)* | *(900)* | *(900)* | *(900)* | *(900)* | *(900)* | *(900)* |
| **LIQUIDITY** | | | | | | | | | | | | | | |
| Book Cash | 138 | 138 | 138 | 138 | 138 | 138 | 138 | 136 | 88 | 88 | 88 | 88 | 88 | 88 |
| Beginning Balance | $559 | $559 | $559 | $559 | $559 | $559 | $559 | $606 | $611 | $611 | $611 | $611 | $611 | $611 |
| (+) Net Cash Flow | 0 | 0 | 0 | 0 | 0 | 0 | (2) | (48) | 0 | 0 | 0 | 0 | 0 | 0 |
| Ending Balance | 138 | 138 | 138 | 138 | 138 | 138 | 136 | 88 | 88 | 88 | 88 | 88 | 88 | 88 |
| **A/R ROLLFORWARD** | | | | | | | | | | | | | | |
| A/R | 24 | | | | | 30 | | | | | | | | |
| Beginning Balance | $559 | $559 | $559 | $559 | $559 | $559 | $559 | $606 | $611 | $611 | $611 | $611 | $611 | $611 |
| (+) Sales | $0 | $0 | $0 | $0 | $0 | $0 | $119 | $75 | $0 | $0 | $0 | $0 | $0 | $- |
| (-) Receipts | $0 | $0 | $0 | $0 | $0 | $0 | ($72) | ($70) | $0 | $0 | $0 | $0 | $0 | $- |
| (-) Adjustments | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | |
| Ending Balance | 559 | 559 | 559 | 559 | 559 | 559 | 606 | 611 | 611 | 611 | 611 | 611 | 611 | 611 |

tabbies® EXHIBIT 7A

# Trans Pecos Foods, LLP

Inputs
($ in 000s)

| | | Week # | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Week in Month | 4 | 1 | 2 | 3 | 4 | 1 | 2 | 3 | 4 | 5 | 1 | 2 | 3 | 4 |
| | | Week Ending Sun, | 4/25 5/1 | 5/2 5/8 | 5/9 5/15 | 5/16 5/22 | 5/23 5/29 | 5/30 6/5 | 6/6 6/12 | 6/13 6/19 | 6/20 6/26 | 6/27 7/3 | 7/4 7/10 | 7/11 7/17 | 7/18 7/24 | 7/25 7/31 |
| 122 | Utilities | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 2 | 0 | 0 | 0 | 0 | 0 | 0 |
| 124 | **Freight** | | | | | | | | | | | | | | | |
| 125 | Existing A/P Freight | Excluding $105K of Preferred Freezer | 0 | 0 | 0 | 0 | 0 | 0 | 34 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 126 | Freight - Future Sales | | 0 | 0 | 0 | 0 | 0 | 0 | 15 | 30 | 0 | 0 | 0 | 0 | 0 | 0 |
| 127 | Freight | | 0 | 0 | 0 | 0 | 0 | 0 | 49 | 30 | 0 | 0 | 0 | 0 | 0 | 0 |
| 129 | **Repairs and Maintenance** | | | | | | | | | | | | | | | |
| 130 | Building R&M | | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 131 | Equipment R&M | | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 132 | Repairs and Maintenance | | 0 | 0 | 0 | 0 | 0 | 0 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 134 | **Professional Services** | | | | | | | | | | | | | | | |
| 135 | Aventine Hill | Accounting Staffing Co | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 136 | Jesse Bigham | | 0 | 0 | 0 | 0 | 0 | 0 | 2 | 3 | 0 | 0 | 0 | 0 | 0 | 0 |
| 137 | Auditor | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 138 | Legal Fees | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 139 | Payroll Services | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 |
| 140 | Information Technology | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 4 | 0 | 0 | 0 | 0 | 0 | 0 |
| 141 | Other | | 0 | 0 | 0 | 0 | 0 | 0 | 2 | 6 | 0 | 0 | 0 | 0 | 0 | 0 |
| 142 | Professional Services | | 0 | 0 | 0 | 0 | 0 | 0 | 4 | 14 | 0 | 0 | 0 | 0 | 0 | 0 |
| 144 | **Equipment and Supplies** | | | | | | | | | | | | | | | |
| 145 | Materials and Supplies | | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 |
| 146 | Production Equipment | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 147 | Equipment and Supplies | | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 1 | 0 | 0 | 0 | 0 | 0 | 0 |
| 149 | **Brokers Commissions** | | | | | | | | | | | | | | | |
| 150 | Broker Commissions | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 151 | Brokers Commissions | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 153 | **Property Taxes** | | | | | | | | | | | | | | | |
| 154 | Pecos City School (PBT Tax Assessor) | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 155 | Reeves County | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 156 | Property Taxes | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 158 | **Insurance** | | | | | | | | | | | | | | | |
| 159 | Standard Funding (Wort Commercial Liability, etc) | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 160 | Blue Cross / Blue Shield, (Other Insurance) | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 2 | 0 | 0 | 0 | 0 | 0 | 0 |
| 161 | Worker's Comp | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 11 | 0 | 0 | 0 | 0 | 0 | 0 |
| 162 | Insurance | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 13 | 0 | 0 | 0 | 0 | 0 | 0 |
| 164 | **Sanitation** | | | | | | | | | | | | | | | |
| 165 | Sanitation (Qvest) | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 166 | Sanitation | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 168 | **T&E / Employee Expenses** | | | | | | | | | | | | | | | |
| 169 | Amex | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 170 | Travel / Employee Reimbursements | | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 171 | T&E / Employee Expenses | | 0 | 0 | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |